MARLAND REFINING CO. v. DUNIGAN.

No. 13885—Opinion Filed Oct. 14, 1924.

Rehearing Denied Nov. 25, 1924.

**1. Oil and Gas—Breach of Drilling Contract—Remedies of Driller—Damages.**

In a case where the contract price is $2 per foot for drilling an oil and gas well to oil or gas and to a depth of not more than 2,150 feet, and suit is brought by plaintiff for damages for breach, on the part of the company, in taking charge of the well when the drilling had reached a depth of 1,668 feet, thereby preventing the driller from completing the well according to contract, the contract is severable as to both parties, and the facts present two elements of damages, one for the finished part of the work and one for the unfinished part of the work and the driller can elect to sue for both in same action or waive either one and sue for the other. If he waives damages for the unfinished part of the work and sues for the finished part, the measure of damages is the price per foot as fixed by the contract.

**2. Same—Judgment Sustained.**

The evidence examined, and held, sufficient to sustain the judgment of the court.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Edward Dewes Oldfield, Judge.

Action by Mark F. Dunigan, surviving partner of Dunigan and Dunigan, against Marland Refining Company, for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

W. K. Moore, Randolph, Haver & Shirk, and H. M. Gray, for plaintiff in error.

Hagan & Gavin, for defendant in error.

Opinion by THREADGILL, C. Defendant in error, as plaintiff, brought suit against plaintiff in error, as defendant, on an oil and gas drilling contract to recover for drilling a well to the depth of 1,668 feet at $2 per foot, and $450, balance due for money expended in the service of the defendant, after the defendant took possession of the well drilled to said depth.

The contract provided that plaintiffs should drill a well 2,150 feet, or to the depth of the Mississippi lime, for the defendant on the Arthur Bryant farm in Osage county, for $2 per foot. The defendant reserved the right to stop the drilling at any depth it might see fit, or after reaching the Mississippi lime the drilling could be continued at $6 per foot for 300 feet. There were various stipulations as to furnishings and machinery which are not in controversy. It was provided further as follows:

"When the said well approaches the oil or gas bearing sand, the party of the first part shall notify the party of the second part, or it's agent in charge of the farm or lease, and thereupon and further drilling and casing into or through the sand, shall be as requested by the said party of the second part, or its agent in charge of the farm or lease, but the work in connection therewith shall be done by and under the direction and at the risk of the party of the first part."

There was another paragraph which provided that time shall be of the essence of the contract, and if plaintiff should abandon the work for 30 days the defendant could take charge without any liability to the plaintiff, except in case it saw fit to complete the well, then the cost of the work should be deducted from the contract price, and if any was left it should be paid to the plaintiff.

The plaintiff pleaded the contract and attached a copy to the petition, and the material facts upon which the issues were joined were substantially as follows:

The plaintiff, Mark F. Dunigan, was the surviving partner of the partnership, and was in process of drilling the well accord-

ing to the contract, and had drilled approximately to a depth of 1.668 feet when he struck a flow of gas of several million feet, and the plaintiff contends that the defendant took possession of the well as a completed gas well, and discharged him from further management or control, and when the possession was taken over by the defendant the plaintiff was entitled to pay for the 1,668 feet drilled in the sum of $3,336. He also complains that after defendant took possession of the well or at the time it took possession there was a "fishing job" in trying to extricate a reamer and other tools lost in the well, and the cost of the work in an effort to clean out the well was the sum of $4,050, $3,600 of which the defendant paid to his force of men and the balance due him on account of the same was the sum of $450, making the full sum of $3,786, with interest at six per cent. from February 1, 1920, due him on account of the two items.

The defendant contends that under the contract it does not owe the plaintiff anything, that the plaintiff failed to drill the well to the depth agreed upon, and that defendant paid to the plaintiff $3,600 in trying to clean out the well and complete it, and that it was entitled to a judgment against the plaintiff for this amount, with interest from February 1, 1920.

These issues were tried to a jury April 13, 1922, and resulted in a verdict and judgment in favor of plaintiff in the sum of $3,710 with interest at six per cent. from February 1, 1920, and defendant appealed by petition in error and case-made, asking for a reversal on the ground of erroneous instructions and insufficiency of the evidence.

1. The defendant first claims that the court instructed the jury that if the defendant prevented plaintiff from fully carrying out the drilling contract the plaintiff was entitled to compensation for the number of feet it had drilled at the rate of $2 per foot and the defendant contends that this is erroneous, because the work stopped with an incomplete well, when the contract was for a complete well. His argument is that the deeper the drilling the more expensive the work by the foot and the proper measure in such a case is the full price for drilling the well to 2,150 feet, less the expense of drilling the last 482 feet to complete the work. Citing: 2 Sedgwick on Damages, section 618; First National Building Co. v. Vandenburg, 29 Okla. 583, 119 Pac. 224; Rogers v. Okla. City, 45 Okla. 269, 145 Pac. 357; Osage Oil Refining Co. v. Lee Farm Oil Co. (Tex.) 230 S. W. 518;

Paragon Oil Co. v. Hughes (Ky.) 236 S. W. 963; Pierce-Fordyce Oil Association v. Co. (Tex.) 187 S. W. 516; Olson v. Novenmacher (Minn.) 65 N. W. 642.

We have read all these cases and others cited by defendant and find they are somewhat similar to the case at bar in the nature of contract and breach, but not as to the fact of damages claimed and sued for. In general they discuss prospective damages or damages under contracts nonseverable. The question of damages is as varied as the facts in the particular case and must be considered and determined in each particular case according to the facts and circumstances of the contract, the breach, and the results, and no one rule will fit all cases or all facts of damages in the particular case. There are cases where the breach results in damages present and prospective, and the plaintiff could claim and bring suit for both in the same action or bring suit for one character of damages and waive the other, and the case tried and question of damages determined according to the rule applicable. The case under consideration as shown by the record had the two elements of damages involved, but plaintiff only brought suit for damages where the work was already done and the price was fixed by the contract at so much per foot for drilling, and plaintiff waived the prospective damages involved in that part of the work which was not done, and which he had a right to do under the contract. The plaintiff contends that the rule applicable in this case is laid down in 17 C. J., page 857, which is as follows:

"Where performance has been entered upon, plaintiff is entitled to the contract price for the work done under and according to the contract and to damages for being prevented from completing the contract.

"Or as the rule has been otherwise stated, where there has been part performance of the contract, the just claims of the party employed to do the labor or service are satisfied when he is recompensed for the part performed and is indemnified for his loss with respect to the part which is unexecuted. Where performance under the contract has advanced to a point where it may be determined from the contract what payment plaintiff is entitled to for the work already done, his measure of recovery is properly the contract price for the part of the contract which has been lost from being prevented from performing the remainder of the contract."

Also as laid down by Sedgwick in his work on Damages (9th Ed.) vol. 2, section 615, page 110, which is as follows:

"If some portion of the contract has been

so far completed that the contract itself furnished a price for such partial performance, the plaintiff should recover the contract price for this completed portion and the profits lost on the remainder of the contract."

The cases cited under this rule are as follows:

"United States * * * Ferris v. U. S., 27 Ct. Cl. 542 (to dredge at fixed price per cubic yard; contract price of amount dredged plus profits on work done recoverable.)"

"California: Hale v. Trout, 35 Cal. 229 (to deliver lumber at certain price; contract price of lumber delivered plus profits on lumber not accepted recoverable:) Upstone v. Weir, 54 Cal. 124 (to manufacture and deliver iron work; plaintiff recovers contract price of part delivered plus profits on the balance.)"

"Iowa: Debol v. Minott, 9 Ia. 403 (to paint ten houses for $70 each; broken after several houses painted. Plaintiff recovers $70 for each house painted, and profits on houses not painted.)"

"Missouri: Gabriel v. Akinsville Pressed Brick Co., 57 Mo. App. 520 (to drive a well at a fixed price per foot; plaintiff recovers agreed price for distance driven and difference between contract price and cost for the remaining distance.)"

We think the rule as above stated by the text writers and discussed by the authorities cited is correct and applicable to the case at bar. The plaintiff waived his right to damages for anticipated profits for the incompleted part of the work, and only asked for damages for the completed part.

The defendant's argument that the expense per foot increased as the drilling advanced in depth and the damages could not be computed per foot upon the feet drilled without considering the expense of the last feet to be drilled to complete the work is without merit, because it appears that the parties considered all the expense in getting ready to commence the work as well as the increased expense per foot in doing the work, and considering all these facts, they agreed upon a price of $2 per foot to complete the well to oil or gas and not to exceed 2,150 feet. We must, therefore, hold that the court was correct in giving the instruction complained of.

Holiday Oil Company v. Smith, 100 Okla. 172, 228 Pac. 775; Elwood Oil and Gas Co. v. McCoy, 72 Okla. 97, 179 Pac. 2.

2. The defendant next complains:

"The court was in error in overruling the demurrer to the evidence, and in overruling the motion for new trial, for the reason that the evidence utterly fails to show any breach of contract upon the part of the defendant, and utterly fails to show that defendant wrongfully prevented plaintiff from carrying out the contract."

We have read the evidence as quoted by both parties, in their briefs, and as reported in the record, and we think it clearly shows that the defendant took possession of the well, either as a completed gas well or with the intention of completing the work itself: at any rate it appears the defendant assumed authority over the well, through its agents, and prevented the plaintiff from continuing the work, and we think the evidence was sufficient for all purposes against the demurrer to the same, and sufficient to go to the jury on all the issues in the case, and is amply sufficient to support the verdict of the jury and the judgment of the court, and motion for new trial was properly overruled. The judgment should be affirmed.

By the Court: It is so ordered.