Hay, Judge,
dissenting:
I can not concur in the opinion of the court.
Section 3732 of the Revised Statutes is as follows:
“ No contract or purchase on behalf of the United States shall be made unless the same is authorized by law or is made under an. appropriation adequate to its fulfillment.”
Section 3733 of the Revised Statutes provides:
“ No contract shall be entered into for the erection, repair, or furnishing any public building, or for any public improvement, which shall bind the Government to pay a larger sum of money than the amount in the Treasury appropriated for the specific purpose.”
The defendant claims that by virtue of the sections of the Revised Statutes quoted above there is no liability upon the United States to pay the contractor a larger sum of money than the amount appropriated for the completion of the work on the channel. The contract made on behalf of the United States in this case was authorized by law, to wit, by the act approved July 25, 1912. On its face and by its terms the appropriation was adequate to its fulfillment, as it only contemplated the expenditure of $19,806.10, a sum within the amount appropriated. If in the progress of the work the funds available for the performance of the contract did not hold out, that fact can not be held to have avoided the contract and to have released the United States from an obligation incurred under a contract authorized by law. The work was under the control of the officers of the Government, as were the funds available for the work. The contractor, by its contract, was compelled to rely upon the inspection made by the officer of the Government who was put in charge of the work for the very purpose of ascertaining the quantity of material dredged. If a mistake was made by the inspec *205 tor that can not furnish the'Government with an excuse to repudiate an obligation incurred under a contract which was authorized by law. The work was stopped because the appropriation was exhausted. This justified the officer in his action, but it does not release the obligation of the United States to pay for the work done under a contract authorized by law to be entered into. A contractor is not chargeable with knowledge of the administration of an appropriation, nor can his legal rights be impaired by the failure of the officer in charge to properly administer the available funds. :‘An appropriation per se merely imposes limitations upon the Government’s own agents; it is a definite amount of money intrusted to them for distribution; but its insufficiency does not pay the Government’s debts nor cancel its obligations nor defeat the rights of other parties.” Chief Justice Nott in Ferris v. United States, 27 C. Cls., 542, 546.
The contract was made by an officer of the United States authorized by law to make such contracts. Nothing is wanting to make it a valid contract binding on both parties. The quantity of work to be done was specifically set out in the contract; the contract was approved by the Chief of Engineers, under whose supervision, by the terms of the statute, the money was to be expended; the work performed was accepted by the Government; it inured to the benefit of the Government; and had it not been done the work would not have been completed within the amount of the appropriations made for its completion. If more work was done under the contract than the appropriation would pay for, can the United States get the benefit of it, enjoy it for all time, and refuse to pay for it? To answer this question in the affirmative would be to perpetrate a gross wrong upon the contractor, who would be made the victim of the mistakes of the Government’s officers under whose direction the work was being performed.
The act making the appropriation and providing for the work which was performed under the contract did not in terms limit the cost of the work, but provided for the work and then made an appropriation which turned out to be inadequate to do the whole work. The authority to cause the work to be done and to make a contract for its performance *206 was complete. The work was authorized by Congress to be done and the authority to complete it authorized a contract to be made for its completion, notwithstanding the fact that the amount appropriated was not sufficient for its completion.
It is a case in which the authority to cause the work to be done and to make contracts therefor is complete and unrestricted. All work, therefore, done under the direction of the officers thus charged with the execution of the law creates a liability on the part of the Government to pay for it, and if a written contract be made and work be done in excess of the contract specifications, or entirely outside of or in addition to i the written contract, and such work inures to the benefit of the United States, in the execution of the law, or is accepted by the proper public officers, a promise to pay its reasonable value is implied and enforced. Shipman v. United States, 18 C. Cls., 138 146; Collins v. United States, 15. C. Cls., 22, 35.
That this was the intention of Congress is borne out by the language of the statute itself. Among other things the statute provides: “That the Government shall not be deemed to have entered upon any project for the improvement of any waterway or harbor mentioned in this act until funds for the commencement of the proposed work shall have been actually appropriated by law ” (37 Stat., 223). And further: “And whenever the appropriations made, or authorized to be made, for the completion of any river and harbor work shall prove insufficient therefor, the Secretary of War may, in his discretion, on the recommendation of the Chief of Engineers, apply the funds so appropriated or authorized to the prosecution of such work ” (37 Stat., 233). The work in question was first authorized to be surveyed by the act approved March 2, 1907 (35 Stat., 1112). The first appropriation made for improving this work was made in the act approved June 25, 1910 (36 'Stat., 644). The appropriation for the completion of the improvement of this work was made in the act approved February 27,1911 (36 Stat., 941). Again, in the act approved July 25,1912 (37 Stat., 209), the appropriation with which we are now concerned was made for the completion of the work. Taking the two provisions above quoted together, it is manifest that the work now under con *207 sideration bad been entered upon, and, baying been entered upon, tbe Secretary of War was authorized to enter into a contract for tbe completion of the work, even though the appropriation made was not sufficient to complete it. Therefore the insufficiency of the appropriation can not be held to defeat the rights of the contractor nor to cancel the obligations of the Government.
When the appropriation of $12,000 was made for the completion of the channel the officer in charge paid to the contractor the sum of $3,046.44 out of said $12,000, which the contractor had earned under his contract. This sum so paid to the contractor was charged to the officer in the settlement of his accounts by the Auditor for the War Department, and upon an appeal to the Comptroller of the Treasury the decision of the auditor was affirmed. Afterwards this sum was deducted from what was due .the contractor upon another contract, having no relation to the subject matter of the contract for the completion of the Clearwater Channel in Florida. This deduction was made over the protest of the contractor and was made at the request of the officer, who, by the decision of the auditor, was in debt to that amount to the United States. The money so taken from the contractor was acquired by the United States without consideration, and the Government is now resisting the payment of money which in equity and good conscience it ought not tor retain. It is not denied that the contractor was entitled to the money which it earned under the second contract. This particular sum of money, to wit, $3,046.44, rightfully due the contractor under its contract, is held for the purpose of saving harmless an officer who is alleged to have wrongfully paid the said sum under another contract. There had been a settlement in full under the first contract, and there was no authority under the circumstances to deduct this amount from what was due the contractor under the second contract.
In the case of the San Francisco, Bridge Co. v. United States, 209 Fed., 135, cited in the opinion of the court, it is to be observed that the contractor was notified by letter that the available funds would permit the excavation of only a *208 certain number of cubic yards. In the face of that notice the contractor excavated 35,000 cubic yards more than the available funds would pay for. In that case the opinion of the court turns upon the question of notice. The court said : “ It is true that plaintiff could not knowingly overrun the appropriation and bind the Government. But it is equally true that it was entitled to rely upon the statements of the officers in charge, who kept the accounts and should know the amount still available to be applied to the work on hand.” In this case no notice was given, and it was not until the excess work had been done that the contractor was informed by the officers that it had dredged more material than the available funds would pay for. In the Curtis case, also cited in the opinion of the court, the amount to be expended was named in the contract, and the limit of cost for the building was specifically set out in the statute.
In the very nature of things, river and harbor work is continuing work; appropriations for the completion of such work are rarely adequate, and it is to be observed that in river and harbor acts no limit of cost is fixed, as is the case in public buildings acts, where without exception a limit of cost is fixed.
I am authorized to say that Judge Booth concurs in this dissenting opinion.