# United States Court of Appeals for the Federal Circuit

---

**PRAIRIE COUNTY, MONTANA,
GREENLEE COUNTY, ARIZONA,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5060

---

Appeal from the United States Court of Federal Claims in No. 1:12-cv-00645-MMS, Judge Margaret M. Sweeney.

---

Decided: April 6, 2015

---

ALAN IRVING SALTMAN, Smith, Currie & Hancock LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by EVANGELIN LEE NICHOLS; CHARLES W. SURASKY, Atlanta, GA.

SHARON ANN SNYDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., BRYANT G. SNEE, SCOTT MACGRIFF.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Prairie County, Montana, and Greenlee County, Arizona (collectively, the "Plaintiffs") appeal from the decision of the United States Court of Federal Claims (the "Claims Court") dismissing their claim against the United States (the "government") seeking additional payments under the Payment in Lieu of Taxes Act ("PILT"), 31 U.S.C. §§ 6901–6907 (2006), for fiscal years 2006 and 2007. *See Prairie Cnty. v. United States*, 113 Fed. Cl. 194 (2013). Because we conclude, as we did in *Greenlee County v. United States*, 487 F.3d 871 (Fed. Cir. 2007), *reh'g & reh'g en banc denied*, No. 06-5053 (Fed. Cir. Aug. 23, 2007), *cert. denied*, 552 U.S. 1142 (2008), that the applicable version of 31 U.S.C. § 6906 limits the government's liability under PILT to the amount appropriated by Congress, we *affirm*.

BACKGROUND

I

In 1976, Congress enacted PILT to "compensate[ ] local governments for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands." *Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 258 (1985). PILT directs the Department of the Interior ("Interior") to "make a payment for each fiscal year to each unit of general local government in which entitlement land is located." 31 U.S.C. § 6902(a)(1). It also provides that the "local government may use the payment for any governmental purpose." *Id.*

PILT provides two alternative formulas for calculating the amount of payment with respect to each eligible local government based on the size of entitlement land

within the jurisdiction of the local government, the population within that jurisdiction, and any funds that the local government received during the prior fiscal year from certain federal revenue-sharing programs. *Id.* § 6903. Section 6903(b)(1) provides that "[a] payment under section 6902 of this title is equal to the greater of" the two amounts derived from the alternative formulas. The applicable version of § 6906 (2006) further provides that "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter. Amounts are available only as provided in appropriation laws." The principal question in this appeal is whether the government's liability under PILT is limited by the amount appropriated by Congress for fiscal years 2006 and 2007.

## II

In a prior suit, Greenlee County unsuccessfully sought full payments according to PILT statutory formulas. For fiscal years 1998 through 2004, Congress did not appropriate sufficient funds to provide for full payments to all eligible local governments according to PILT formulas. Interior followed the relevant regulation[1] and proportionally reduced PILT payments to each local government. Greenlee County thus received PILT payments for each of those fiscal years, but did not receive the full amount according to the statutory formulas.

In 2004, Greenlee County sued the United States in the Claims Court seeking to recover the difference between the amounts calculated based on PILT statutory

---

[1]    43 C.F.R. § 44.51(b) (2006) provides that "[i]f Congress appropriates insufficient monies to provide full payment to each local government during any fiscal year, the Department will reduce proportionally all payments in that fiscal year."

formulas and the amounts it actually received for fiscal years 1998 through 2004.  The Claims Court, however, concluded that under § 6906 the government's obligation was "expressly conditioned on the availability of appropriations," *Greenlee Cnty. v. United States*, 68 Fed. Cl. 482, 486 (2005), and thus dismissed Greenlee County's suit "for failure to state a claim," *id.* at 483.

On appeal, we affirmed the Claims Court.  *Greenlee Cnty.*, 487 F.3d at 873.  We concluded that "the language of § 6906 limits the government's liability under PILT to the amount appropriated by Congress."  *Id.* at 878.  Greenlee County recognized that, under the then-existing case law, the language of "subject to the availability of appropriations" in other statutes, such as the Indian Self-Determination and Education Assistance Act ("ISDA"), was generally interpreted as restricting the government's liability to the amount appropriated by Congress.  *Id.* Greenlee County nevertheless sought to distinguish the "subject to the availability of appropriations" language from the language of § 6906.  *Id.*  We rejected that argument and found "little functional difference between saying that amounts are 'subject to the availability of appropriations' and saying that amounts are 'available only as provided in appropriations laws'" for limiting the government's liability.  *Id.*  Additionally, we reasoned that "[t]he conclusion that PILT limits the government's liability to the amount appropriated is particularly appropriate because PILT, like the statute in *Star-Glo*, involves a benefits program not a contract, and 'there is greater room' in benefits programs to find the government's liability limited to the amount appropriated."  *Id.* at 879 (citing *Star-Glo Assocs., LP v. United States*, 414 F.3d 1349, 1355 (Fed. Cir. 2005)).

Greenlee County filed a petition for writ of certiorari in the Supreme Court, which the Court denied.  *Greenlee Cnty. v. United States*, 552 U.S. 1142 (2008).

## III

For fiscal years 2006 and 2007, Congress again did not appropriate sufficient funds to provide for full payments according to PILT formulas. In 2012, the Plaintiffs sued the United States in the Claims Court, seeking to recover the difference between the amounts calculated based on PILT formulas and the PILT payments that they actually received for those two fiscal years. *Prairie Cnty.*, 113 Fed. Cl. at 198. The Plaintiffs asserted that the Supreme Court's decision in *Salazar v. Ramah Navajo Chapter*, 132 S. Ct. 2181 (2012), changed the law such that our decision in *Greenlee County* is no longer controlling. In *Ramah*, the Court held that the government is obligated to pay the full amount of contract support costs under ISDA contracts, when the amount appropriated by Congress is sufficient to pay the costs of any individual contracting tribe, but insufficient to pay the total costs of all contracting tribes. 132 S. Ct. at 2186.

The government moved to dismiss for failure to state a claim, and the Claims Court granted the motion. The court concluded that *Greenlee County* remains controlling precedent because *Ramah* involves government contracts and the PILT program does not. *Prairie Cnty.*, 113 Fed. Cl. at 200. The court noted that the Supreme Court in *Ramah* emphasized that its decision was based on longstanding principles of government contract law, whereas we have stated in *Greenlee County* that PILT involves a benefits program, not a contract. *Id.* at 201. The court also found that the Plaintiffs failed to allege any implied-in-fact contract with the United States in their complaint. *Id.* at 202. Moreover, the court held that Greenlee County was collaterally estopped from relitigating the same issue. *Id.* at 203.

The Claims Court denied the Plaintiffs' motion for reconsideration and dismissed their suit. The Plaintiffs

appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Claims Court's grant of a motion to dismiss for failure to state a claim *de novo*. *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 954 (Fed. Cir. 2013). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy." *Id.* Issues of statutory interpretation are also reviewed *de novo*. *Qantas Airways Ltd. v. United States*, 62 F.3d 385, 387 (Fed. Cir. 1995).

The Plaintiffs argue that the Supreme Court held in *Ramah* and *Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631 (2005), that when multiple obligations are to be paid out of a single lump sum appropriation, the statutory language of "subject to the availability of appropriations" does not limit the government's total liability to the amount appropriated by Congress. The Plaintiffs assert that this court in *Greenlee County* misinterpreted similar language in § 6906 as limiting the government's liability. According to the Plaintiffs, the government is obligated to pay them the full amounts according to PILT formulas upon Congress's appropriation of funds that are sufficient to cover their individual amount, even if insufficient to pay all eligible local governments according to the formulas. The Plaintiffs also argue that PILT is not a benefits program and, regardless, that there is no basis to treat contractual obligations and statutory benefits differently. Additionally, the Plaintiffs contend that Greenlee County is not collaterally estopped from bringing this suit because *Ramah* changed the applicable law.

The government responds that *Ramah* does not change the precedential value of *Greenlee County*, which controls in this case because the same statutory language of § 6906 that applied in *Greenlee County* also applies here. The government emphasizes that *Ramah* addresses

issues of government contract law in the context of ISDA and does not apply in this case because the government does not owe any contractual obligation to the Plaintiffs. The government maintains that PILT payments are subsidies made at the discretion of Congress and that, as we have decided in *Greenlee County*, § 6906 limits the government's liability. Moreover, the government responds that Greenlee County is collaterally estopped from relitigating the same issue because *Ramah* has not changed the law with respect to PILT payments.

We agree with the Claims Court and the government that the Supreme Court's decision in *Ramah*, decided after *Greenlee County*, does not compel a different interpretation of PILT. And we conclude, as we did in *Greenlee County*, that the plain language of the applicable version of § 6906 limits the government's liability under PILT to the amount appropriated by Congress.

In *Greenlee County*, we considered prior cases that addressed the issue whether the government's liability is limited by Congressional appropriations in the context of statutes other than PILT. 487 F.3d at 877–80 (citing *Cherokee Nation*, 543 U.S. 631 (ISDA); *United States v. Langston*, 118 U.S. 389 (1886) (a statute that provides for a specific amount of salary to the representative of the United States in Haiti); *Star-Glo*, 414 F.3d 1349 (a statute that provides for payments to citrus growers for trees destroyed by a citrus disease); *N.Y. Airways, Inc. v. United States*, 369 F.2d 743 (Ct. Cl. 1966) (a statute that provides for payments to carriers for transporting mail)). We recognized that "'[i]t has long been established that the mere failure of Congress to appropriate funds, without further words modifying or repealing, expressly or by clear implication, the substantive law, does not in and of itself defeat a Government obligation created by statute.'" *Greenlee Cnty.*, 487 F.3d at 877 (quoting *N.Y. Airways*, 369 F.2d at 748). We noted, however, that "in some instances the statute creating the right to compensation .

. . may restrict the government's liability . . . to the amount appropriated by Congress." *Id.* at 878. After analyzing PILT, we concluded that it is so limited because the plain language of § 6906 limits the government's liability to the amount appropriated by Congress. *Id.* at 878, 880. We reasoned that our conclusion is "particularly appropriate" because PILT "involves a benefits program not a contract, and there is greater room in benefits programs to find the government's liability limited to the amount appropriated." *Id.* at 879 (internal quotation marks omitted).

*Ramah* involves ISDA, a different statute, and decides whether the government's obligation to pay contract support costs under self-determination contracts is limited by the amount appropriated by Congress. *Ramah*, 132 S. Ct. at 2186. As the Supreme Court explained in *Ramah*, ISDA "directs the Secretary of the Interior, 'upon the request of any Indian tribe . . . to enter into a self-determination contract . . . to plan, conduct, and administer' health, education, economic, and social programs that the Secretary otherwise would have administered." *Id.* (citing 25 U.S.C. § 450f(a)(1)). The statute requires the government "to contract to pay the 'full amount' of 'contract support costs.'" *Id.* (citing § 450j-1(a)(2), (g)). Moreover, "Congress included a model contract in ISDA and directed that each tribal self-determination contract 'shall . . . contain, or incorporate [it] by reference.'" *Id.* at 2187 (quoting § 450*l*).

ISDA also provides that, "'[n]otwithstanding any other provision in [ISDA], the provision of funds under [ISDA] is subject to the availability of appropriations.'" *Id.* at 2186–87 (quoting § 450j-1(b)). The model contract specifies that, "'[s]ubject to the availability of appropriations, the Secretary shall make available to the Contractor the total amount specified in the annual funding agreement' between the Secretary and the tribe," which includes contract support costs. *Id.* at 2187 (quoting

§ 450*l*(c)).  For each fiscal year at issue in *Ramah*, Congress appropriated a total amount "for the operation of Indian programs," of which "not to exceed [a particular amount]" was allocated for paying contract support costs. *Id.* (quoting Department of the Interior and Related Agencies Appropriations Act, 2000, 113 Stat. 1501A-148). The appropriated amounts, however, were insufficient to pay the aggregate contract support costs of all tribal contractors, and the government paid the tribes' contract support costs on a uniform, pro rata basis.  *Id.*

The Court held that, notwithstanding the "subject to the availability of appropriations" language in both ISDA and the self-determination contracts incorporating the model contract, the tribes could recover the full amount of contract support costs because "the Government cannot back out of its contractual promise to pay each Tribe's full contract support costs." *Ramah*, 132 S. Ct. at 2191.  In reaching that conclusion, the Court relied on "well-established principles of Government contracting law," *id.* at 2189 (citing *Ferris v. United States*, 27 Ct. Cl. 542, 546 (1892)), as well as its earlier decision in *Cherokee Nation*, in which the Court "stressed that the Government's obligation to pay contract support costs should be treated as an ordinary contract promise, noting that ISDA uses the word 'contract' 426 times to describe the nature of the Government's promise," *id.* at 2188 (internal quotation marks omitted).  The Court explained that its ruling "safeguards . . . the expectations of Government contractors," *id.* at 2189, and "furthers the Government's own long-run interest as a reliable contracting partner in the myriad workaday transaction of its agencies," *id.* at 2190 (internal quotation marks omitted).

Here in this case, as we have stated in *Greenlee County*, PILT does not involve a contract.  It is different from *Ramah* and *Cherokee Nation*, as not all grants of benefits are contracts.  And the Plaintiffs do not appeal from the Claims Court's determination that they failed to allege

any implied-in-fact contract.  PILT provides payments to eligible local governments to compensate them "for the loss of tax revenues resulting from the tax-immune status of federal lands located in their jurisdictions, and for the cost of providing services related to these lands."  *Lawrence Cnty.*, 469 U.S. at 258.  Congress does not require the local governments to provide particular services in return for receiving PILT payments.  The statute provides that a "local government may use the payment for *any* governmental purpose."  31 U.S.C. § 6902(a)(1) (emphasis added); *see also Lawrence Cnty.*, 469 U.S. at 269 ("[T]he counties should not be denied the discretion to spend § 6902 funds for *any* governmental purpose, *including* expenditures that are linked to federal lands within their borders." (emphases added)).  Accordingly, this case does not involve the same question as that addressed by the Supreme Court in *Ramah* and *Cherokee Nation*.

Absent a contractual obligation, the question here is whether the statute reflects congressional intent to limit the government's liability for PILT payments, or whether PILT imposes a statutory obligation to pay the full amounts according to the statutory formulas regardless of appropriations by Congress.  As we have concluded in *Greenlee County*, the plain language of § 6906 indicates that Congress intended to limit the government's obligation to the amount appropriated.  The applicable version of § 6906 provides that "[n]ecessary amounts may be appropriated to the Secretary of the Interior to carry out this chapter.  Amounts are available *only* as provided in appropriation laws."  31 U.S.C. § 6906 (2006) (emphasis added).  The inclusion of the word "only" limits the availability of PILT payments to appropriations.

Moreover, the original version of what became § 6906 reads as follows: "There are authorized to be appropriated for carrying out the provisions of this chapter such sums as may be necessary: *Provided*, That, notwithstanding any other provision of this chapter *no funds may be made*

*available except to the extent provided in advance in appropriation Acts.*" 31 U.S.C. § 1607 (1976) (second emphasis added); *see also* Pub. L. No. 94-565, § 7, 90 Stat. 2662, 2665–66 (1976). The language of the original version clearly authorizes payments to local governments only to the extent appropriated by Congress. *See, e.g., Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute. And where the statutory language provides a clear answer, it ends there as well." (citations omitted) (internal quotation marks omitted)). In 1982, Congress recodified Title 31 of the United States Code, including PILT, and altered the language of § 6906 to the version that we apply in this case. *See* 31 U.S.C. § 6906 (1982); Pub. L. No. 97-258, § 1, 96 Stat. 877, 1035 (1982). However, Congress explained that it did not intend to change the meaning of the provision: "Sections 1–3 of this Act restate, without substantive change, laws enacted before April 16, 1982, that were replaced by those sections. Those sections may not be construed as making a substantive change in the laws replaced." Pub. L. No. 97-258, § 4(a), 96 Stat. at 1067 (1982).

We also note that if Congress had intended to obligate the government to make full PILT payments, it could have used different statutory language. Indeed, Congress amended § 6906 in 2008 to achieve a different result for later years when it enacted the Emergency Economic Stabilization Act, Pub. L. No. 110-343, Div. C, Title VI, § 601(c)(1), 122 Stat. 3765, 3911 (Oct. 3, 2008). Section 6906, as amended, provides that: "For each of fiscal years 2008 through 2012—(1) each county or other eligible unit of local government shall be entitled to payment under this chapter; and (2) sums shall be made available to the Secretary of the Interior for obligation or expenditure in

accordance with this chapter."[2]  31 U.S.C. § 6906 (2008). Notably, when amending § 6906, Congress chose not to retroactively apply the amended provision to fiscal years 2006 and 2007, the fiscal years at issue in this appeal.[3]

We have considered the Plaintiffs' remaining arguments but find them unpersuasive.  Accordingly, we conclude that the applicable version of § 6906 limits the government's liability under PILT to the amount appropriated by Congress.  The Claims Court thus correctly held that, on undisputed facts, the Plaintiffs may not recover the difference between the amounts calculated based on PILT formulas and the PILT payments that they actually received for fiscal years 2006 and 2007.  In light of our resolution of this appeal on statutory grounds, we need not address the collateral estoppel ground of the Claims Court's decision.

## CONCLUSION

For the foregoing reasons, we conclude that the applicable version of § 6906 limits the government's liability under PILT to the amount appropriated by Congress for fiscal years 2006 and 2007.  Because the Claims Court correctly dismissed the Plaintiffs' suit for failure to state a claim, we affirm its decision.

**AFFIRMED**

---

[2]     Congress subsequently extended the effective time period from fiscal year 2012 to 2013, Pub. L. No. 112-141, Div. F, Title I, § 100111, 126 Stat. 405, 906 (2012), and then from fiscal year 2013 to 2014, Pub. L. No. 113-79, Title XII, § 12312, 128 Stat. 649, 992 (2014).

[3]     Because the newer version of § 6906 does not apply to this case, we need not decide here whether the amendment would entitle all eligible local governments to receive full PILT payments according to the statutory formulas.